# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1662V

| | |
|---|---|
| ERIC MATES,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 11, 2024 |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA*, for Petitioner.

*Madalyn Louise Yarc, U.S. Department of Justice, Washington, DC*, for Respondent.

## DECISION AWARDING DAMAGES[1]

On November 23, 2020, Eric Mates filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine administered to him on November 20, 2019. Petition at 1, ¶ 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. After Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Less than one month after I determined Petitioner was entitled to compensation, he informed me that the parties had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed Apr. 20, 2022, ECF No. 27.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount $**135,000.00, reflecting actual pain and suffering.** The parties have also agreed Petitioner is entitled to **$635.00 for unreimbursed expenses**.[4]

**I.      Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my

---

.
[4] Petitioner's Brief in Support of Damages ("Brief") at 1 n.1, 11; Respondent's Brief Addressing Damages ("Opp.") at 1, 13; Petitioner's Reply to Opp. ("Reply") at 1 n.1, 3.

2

predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II.     Prior SIRVA Compensation Within SPU[6]

### A.     Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of January 1, 2024, 3,696 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 3,588 of these cases, with the remaining 108 cases dismissed.

2,075 of the compensated SPU SIRVA cases were the result of a reasoned ruling that petitioner was entitled to compensation (as opposed to an informal settlement or concession).[7] In only 200 of these cases, however, was the amount of damages *also*

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[7] The remaining 1,513 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do

determined by a special master in a reasoned decision.[8] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[9]

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

|  | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[10] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *200* | *1,846* | *29* | *1,513* |
| **Lowest** | $40,757.91 | $10,000.00 | $45,000.00 | $2,500.00 |
| **1st Quartile** | $70,000.00 | $61,338.13 | $90,000.00 | $36,000.00 |
| **Median** | **$88,974.23** | **$81,049.85** | **$130,000.00** | **$53,500.00** |
| **3rd Quartile** | $125,007.45 | $110,000.00 | $162,500.00 | $80,000.00 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B.     Pain and Suffering Awards in Reasoned Decisions

In the 200 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $210,000.00, with $85,000.00 as the median amount. Only nine of these

---

with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[8] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (1,846 cases) or stipulation (29 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[9] Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[10] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[11]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In eight cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### III.  Appropriate Compensation for Petitioner's Pain and Suffering

#### A.  The Parties' Arguments

The only disputed damages component is the amount to be awarded for Petitioner's pain and suffering. Petitioner seeks $200,000.00. Brief at 1, 11; Reply at 1, 3. In contrast, Respondent argues for an award of only $135,000.00. Opp. at 1, 13.

When arguing for this greater pain and suffering award, Petitioner emphasizes his prompt pursuit of treatment (12 days post-vaccination), reports of pain levels of five and

---

[11] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

four out of ten when first seeking treatment on December 2, 2020, and prior to receiving his second steroid injection on May 19, 2021, respectively, and two arthroscopic surgeries performed in 2020 and 2022. Brief at 8-9. He favorably compares the facts and circumstances in his case with three other cases involving two surgeries and injuries spanning more than three years - *Pruitt, M.W.,* and *Meindorf* - involving pain and suffering awards ranging from $185,000.00 to $200,000.00.[12] Brief at 7-8, 10-11.

To support his characterization of a milder SIRVA injury, Respondent stresses Petitioner's consistent reports of lower pain levels (two out of ten) prior to and after his first arthroscopic surgery. Opp. at 10. He also attributes some of Petitioner's symptoms, especially those reported after the first arthroscopic surgery to an unrelated co-existing condition, cervical radiculopathy. *Id.* at 10-11. And he emphasizes that Petitioner's later complaints of more severe symptoms and second arthroscopic surgery occurred after an almost-thirteen-month gap in treatment following the second (post-surgical) steroid injection in May 2020, and one month after the parties reached an impasse in their damages discussions. *Id.* Respondent does not cite any comparable SIRVA cases, but attempts to distinguish the cases cited by Petitioner, insisting Petitioner suffered a more moderate SIRVA injury. *Id.* at 11-12.

### B.    Analysis

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole, including the medical records and affidavits filed and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I ultimately base my determination on the circumstances of this case.

The medical records show Petitioner suffered a SIRVA involving mildly limited range of motion ("ROM") and initially moderate pain (four to five out of ten).[13] Although a

---

[12] *Pruitt v. Sec'y of Health & Hum. Servs.,* No. 17-0757V, 2021 WL 5292022 (Fed. CL. Spec. Mstr. Oct. 29, 2021) (awarding $185,000.00 for pain and suffering); *M.W. v. Sec'y of Health & Hum. Servs.,* No. 18-0267V, 2021 WL 3618177 (Fed. Cl. Spec. Mstr. Mar. 17, 2021) (awarding $195,000.00 for pain and suffering); *Meirndorf v. Sec'y of Health & Hum. Servs.,* No. 19-1876V, 2022 WL 1055475 (Fed. Cl. Spec. Mstr. Mar. 7, 2022) (awarding $200,000.00 for pain and suffering).

[13] Exhibit 2 at 85-88 (emergency room visit on December 2, 2019); Exhibit 8 at 6-9 (primary care provider visit on January 8, 2020); Exhibit 4 at 25-28 (orthopedic visit on January 13, 2020).

steroid injection, administered approximately three months post-vaccination, provide only a few days of pain relief, Petitioner reported lower pain levels (usually two out of ten) at physical therapy ("PT") and orthopedic visits thereafter.[14] He underwent arthroscopic surgery on July 15, 2020, approximately nine months post-vaccination. Exhibit 4 at 33.

During this time, Petitioner (a 38-year-old IT specialist) also underwent a cervical MRI, that was ordered in August 2019 (approximately two months prior to vaccination) in response to his complaints of lower back pain. *See* Exhibit 4 at 30-32 (orthopedic visit for back pain on August 6, 2019). And some of the symptoms Petitioner reported post-vaccination, such as neck pain and numbness in his fingers, were more likely related to his cervical issues. *See* Exhibit 2 at 80; Exhibit 8 at 6; Exhibit 4 at 25, 20 (in chronologic order). Performed on January 20, 2019, the MRI revealed findings involving the C5 to C7 vertebrae. Exhibit 3 at 3-4. After reviewing these results, the orthopedist added a diagnosis of cervical radiculopathy when treating Petitioner's left shoulder and neck pain on February 13, 2020. Exhibit 4 at 22.

Additionally, a left shoulder MRI, performed on February 20, 2020, showed findings consistent with Petitioner's SIRVA, but also some conditions, such as a small anteroinferior paralabral cyst, unlikely to have been aggravated by vaccination. Exhibit 3 at 2. Thus, not all of Petitioner's pain and suffering during this time can be attributed to his SIRVA.

For two months post-surgery, Petitioner reported pain levels fluctuating from two to ten. Exhibit 4 at 7; Exhibit 10 at 7. By his fifth post-surgical PT session on September 15, 2020, his pain had decreased to one, with no current pain and accompanying temporary increases in severity related to activity. Exhibit 12 at 57. Petitioner reported this same pain level (zero to one) at his twelfth and last post-surgical PT session on October 22, 2020. *Id.* at 83. Although Petitioner reported more moderate pain (four out of ten) at orthopedic appointments in February and May 2021, he obtained good relief from a second steroid injection administered on May 19, 2021. Exhibit 10 at 28.

Petitioner did not seek treatment again until June 16, 2022, after an almost 13-month gap in treatment. Exhibit 11 at 4-8. It is important to note that this visit occurred approximately 18-months after this claim was initiated and two months after the parties reached an impasse in their damages discussions. An MRI, performed on that visit (on June 9, 2022), revealed a previously-identified cyst and findings "likely secondary to postsurgical changes." *Id.* at 10. And the orthopedist diagnosed Petitioner with osteoarthritis and adhesive capsulitis. Exhibit 14 at 11-12. Furthermore, a different orthopedist, from whom Petitioner sought a second opinion in September 2022,

---

[14] Exhibit 4 at 20, 15 (orthopedic visits on February 13 and March 16, 2020, respectively); *Id.* at 45 (reporting intermittent pain an=t levels of one to two at a PT session on March 10, 2020).

7

concluded that "much of the symptoms that he is complaining about today in the office are likely associated with cervical spine pathology." Exhibit 13 at 7. There is not sufficient evidence to connect Petitioner's later symptoms and second surgery, performed in November 2022, to the SIRVA he suffered three years earlier in late 2019.

Overall, the record supports a finding that Petitioner suffered a relatively mild SIRVA for approximately 19 months, featuring one arthroscopic surgery, two cortisone injections, and a modest amount of PT prior to and post-surgery. As a result, the cases cited by Petitioner are inadequate comparables. Instead, I find that the facts and circumstances of Petitioner's case more closely resemble those in *Amor, Anglewicz, Blanco,* and *Majerus*, involving pain and suffering awards ranging from $130,000.00 to $135,000.00.[15] These cases involved mild to moderate pain levels, SIRVAs lasting from 10 to 30 months, one arthroscopic surgery, one to four steroid injections, and moderate amounts of PT. Like this case, I found there was insufficient evidence in *Anglewicz* to connect later treatment to her SIRVA. *Anglewicz* at 7.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $135,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[16] I also find that Petitioner is entitled to $635.00 in actual unreimbursable expenses.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $135,635.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

---

[15] *Amor v. Sec'y of Health & Hum. Servs.,* No. 20-0978V, 2024 WL 1071877 (Fed. CL. Spec. Mstr. Feb. 8, 2024) (awarding $130,000.00 for pain and suffering); *Anglewicz v. Sec'y of Health & Hum. Servs.,* No. 20-1504V, (May 24, 2024), found on the United States Court of Federal Claims website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc (last visited June 10, 2024) (awarding $130,000.00 for pain and suffering); *Blanco v. Sec'y of Health & Hum. Servs.,* No. 18-1361V, 2020 WL 4523473 (Fed. Cl. Spec. Mstr. July 6, 2020) (awarding $135,000.00 for pain and suffering); *Majerus v. Sec'y of Health & Hum. Servs.,* No. 20-1346V, 2023 WL 4573215 (Fed. Cl. Spec. Mstr. June 16, 2020) (awarding $135,000.00 for pain and suffering).

[16] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The Clerk of Court is directed to enter judgment in accordance with the Decision.[17]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[17] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.